IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SGT. RONALD MUNIZ, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. |
| | : | |
| DENNIS P. WILLIAMS, individually and in his official capacity as the Mayor of the City of Wilmington and CITY OF WILMINGTON, a municipal corporation, | : : : : | JURY TRIAL DEMANDED |
| | : | |
| Defendants. | : | |

## COMPLAINT

1.      Plaintiff Ronald Muniz ("Sgt. Muniz" or "Plaintiff") brings this action against defendants Dennis P. Williams and the City of Wilmington (collectively "Defendants") arising from their failure to promote him to lieutenant in January 2013 in violation of his rights under federal and state law.

Nature of the Case

2.      Prior to when Mayor Dennis P. Williams (the "Mayor") took office in the City of Wilmington, Delaware (the "City") in January 2013, he decided to create a more diverse leadership in the City's police and other departments. In his words, "[t]he old days of the grouchy old man in the room, they're done under this administration." Shortly after being elected, Williams made it known that he would hire young people and women to leadership positions in City government, and that any employee who could not "handle" it, would be "dismissed immediately." In connection with his desire to create a more diverse leadership in City government, the Mayor shared his "diversity vision" with senior police department management prior to and after his election, and immediately

implemented race, national origin, and gender-conscious promotions to accomplish a rebalancing of the gender and racial make up of the leadership of the police department. In the wake of these promotions, qualified candidates such as Sgt. Muniz that did not possess the particular "demographics" that the Mayor wished to increase in the Department's leadership ranks, were improperly denied promotions in the City police department.

   3. Sgt. Muniz alleges that the Mayor and City engaged in employment discrimination on the basis of his race, national origin and gender and denied him a promotion based on these characteristics as alleged in this Complaint. This employment discrimination case is brought pursuant to the provisions of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution ("Fourteenth Amendment") as enforced by 42 U.S.C. § 1983 ("Section 1983"); the Civil Rights Act of 1866; 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991 ("Section 1981"); Title VII of the Civil Rights of 1964, 42 U.S.C. §§ 2000e, *et seq.,* as amended ("Title VII"); and the Delaware Discrimination in Employment Act, 19 *Del. C.* § 710, *et. seq.* ("DDEA").

Jurisdiction and Venue

   4. This Court has jurisdiction of the action pursuant to 28 U.S.C. §§1331 and 1343. This action arises under the Fourteenth Amendment to the United States Constitution, and under federal laws, 42 U.S.C. §§1981, 1983, and 2000e *et seq*. The Court has supplemental jurisdiction over the state law claim, pursuant to 28 U.S.C. § 1367, as the state law claim set forth herein arises from the same nucleus of facts as the federal claims.

5.     Venue in this Court is proper under 28 U.S.C. §1391 and this Court has personal jurisdiction over the Defendants in this matter because the events giving rise to these claims occurred in this district.

## Parties

6.     Sgt. Muniz is a citizen of the United States and a resident of the State of Delaware. He is Caucasian Hispanic.

7.     Defendant Dennis P. Williams is the current Mayor of the City of Wilmington, DE. He is sued individually and in his official capacity. Mr. Williams is African American.

8.     The City is a municipal corporation duly authorized under the laws of the State of Delaware, maintaining its offices at the Louis L. Redding City/County Building, 800 North French Street, Wilmington, DE 19801. The City employs over 500 people. The Wilmington Police Department ("WPD") is the law enforcement municipal department of the City.

## Exhaustion of Administrative Remedies

9.     Sgt. Muniz exhausted required administrative remedies prior to bringing this action. He filed a charge of discrimination with the Delaware Department of Labor ("DDOL") and the Equal Employment Opportunity Commission ("EEOC") on or about August 6, 2013. Sgt. Muniz's Intake Questionnaire and Charge of Discrimination detail his allegations and are incorporated herein by reference. In his charge of discrimination, Sgt. Muniz alleged discrimination on the basis of his race and national origin.

10.    The EEOC issued a right to sue letter on or about March 24, 2014.

Factual Background

11. Sgt. Muniz is a veteran of the United States Army. In the United States Army, he earned the Army Achievement Medal, Good Conduct Medal and Overseas Service Ribbon.

12. Sgt. Muniz serves in the Air National Guard as a Unit Training Manager and Airfield Firefighter and has done so since 2004. In his role as an Airfield Firefighter, Sgt. Muniz earned the Delaware Conspicuous Service Cross.

13. Sgt. Muniz graduated from Delaware Technical and Community College in 2010 where he attained an associate degree in criminal justice. He is continuing his education at the Community College of the Air Force focusing on a management concentration.

14. Sgt. Muniz was employed by the City of Wilmington Fire Department from August 1993 to June 1999 in the Fire Suppression Division and Fire Marshal's Office. While employed by the Fire Marshal's Office, he was awarded a commendation from the City.

15. Sgt. Muniz has been continuously employed by the WPD for 14 years. He currently holds the rank of Detective Sergeant.

16. Sgt. Muniz has held the following positions with the WPD:

- **Detective Sergeant 2013-present**

  Responsible for investigating major felonies, fraud, property and financial crimes. Coordinate the activities of the detectives assigned to the unit, including assignment of work priorities, case performance and evaluation, reviewing investigative reports and assuming field command of incidents requiring coordinated efforts of various units. Assist with

photographing, documenting and processing evidence. Conduct inventory for accountability of evidence.

- **Crisis Management and Tactical Team 2007-present**

Execute high risk warrants and respond to hostage situations and armed suicidal suspects. Assist and coordinate with federal agencies for the protection of dignitaries and high ranking members of the government including executive details. Tasked with assisting Immigration and Customs Enforcement officers with boarding and inspecting of commercial ships on the Delaware River.

- **Platoon Sergeant 2010-2013[1]**

Responsible for coordinating the activities of the units assigned to the shift, including assignment of work priorities and evaluating performance, reviewing police reports and assuming field command of incidents requiring coordinated efforts of various units. Investigate citizen complaints against subordinate officers.

- **Detective, Criminal Investigations Division 2007-2010**

Chief investigating officer of all major crimes including: homicides; sex crimes; robberies; burglaries; arsons; financial crimes; and auto thefts.

- **Uniformed Services Division 1999-2007**

Performed police patrol functions, enforced state and local laws and ordinances. Protected citizens and their property and arrested individuals in violation of the law. Received awards for "Outstanding Service" and two "Keys to Success" awards from the City.

17. Sgt. Muniz has repeatedly been requested to perform Lieutenant level work in the WPD including leading the Firearms Squad Unit, where he was responsible for

---

[1] In January 2011 due to layoffs and a structural reorganization, Sgt. Muniz's rank was changed from Sergeant to Master Corporal but was changed back to Sergeant in June 2011.

5

administrative duties and tactical leadership of that squad, and reported directly to the Criminal Investigations Captain.

18.   Sgt. Muniz also was requested to conduct the investigation of an officer involved shooting. Such criminal investigations involving WPD officers are commonly conducted by Detective Lieutenants.

Muniz was Qualified to Be Promoted to Lieutenant

19.   As set forth above, Sgt. Muniz was well qualified by his experience to be promoted to Lieutenant in January 2013.

20.   To be promoted to the rank of Lieutenant, candidates must serve in the sergeant rank for at least one year as of April 15 of the year of the start of the new promotional list. Sgt. Muniz met this requirement.

21.   Promotional examinations are given every two years and the promotional list remains valid for two years. Examinations consist of a multiple choice exam; a problem analysis exercise; and an oral resume presentation. Once the scores of all candidates are determined, bands are created from highest to lowest (A-D) based upon the examination score.

22.   The WPD chief of police is permitted to select individuals for recommendation for promotion from Band A (the band with the highest scores) and only when individuals in Band A are exhausted, can the police chief look to Band B to fill a vacancy.

23.   Sgt. Muniz took the promotional exam in early 2012. He scored second highest on the promotional exam. Eleven other sergeants were selected to join him in Band A. Band A from the 2012 Promotional Examination consisted of ten White officers

and two Black Officers. Sgt. Muniz was the only Band A officer identified by the City as Hispanic. Band A contained eleven male officers and one female officer.

24. Following the release of the promotional examination scores in the Spring of 2012, then Captain Christine R. Dunning told Sgt. Muniz that he had a good chance of being promoted based upon his promotional exam score. In fact, the two sergeants who scored third and fourth highest were both promoted to Lieutenant prior to the Mayor's election, and Sgt. Muniz remains the only one of the top four (of the twelve originally in Band A) who has not been promoted.

A New Mayor Is Elected

25. On or about November 6, 2012, the Mayor was elected. Mr. Williams took office on January 8, 2013.

26. Prior to when Mr. Williams took office, he authored a document entitled "Creating Safe and Strong Neighborhoods" that detailed "The Nature of the Public Safety Problem in Wilmington" and set forth "Immediate and Aggressive Steps to Deal with Violent Crime." Nothing in Williams' thirteen page public safety plan indicated that there was a lack of diversity in the leadership of the WPD nor detailed how any such perceived lack of diversity impacted public safety or otherwise created an operational need to diversify the leadership of the WPD. Furthermore, Mr. Williams' public safety plan did not indicate that race, national origin or gender would be factors in making changes to the leadership of the WPD. Rather, it states that "[p]romotions, advancements, transfers, and all opportunities in this administration will be awarded based on organizational needs and individual merit."

### The Mayor Uses Race, National Origin and Gender
### As Factors In Making WPD Promotions

27. Before even taking office, the Mayor began pushing for changes to the leadership of the WPD in an effort to have its leadership better reflect the demographics of the City.

28. In early December 2012, the Mayor announced that he would appoint Christine R. Dunning (Caucasian Non-Hispanic Female) to serve as Chief of Police of the WPD. He told Chief Dunning that "[i]n relation to promotions and transfers" he "wanted diversity." In fact, Chief Dunning has acknowledged that the Mayor stressed diversity as one of his goals for promotions and transfers within the WPD. At the time of her promotion, the Mayor explained his reasoning for promoting a woman to chief by making inappropriate (but revealing) generalizations about women: "Everybody else better get used to it, because women aren't going away. They make sound decisions. They think very analytically . That's the reason why she is going to be my chief."

29. Chief Dunning had discretion in making recommendations to the Mayor in early January 2013 for open Lieutenant and Captain positions. Chief Dunning took the Mayor's statements regarding diversity into account when making recommendations to the Mayor for promotions. In a memo she drafted to the Mayor on January 16, 2013, she wrote, "there will be two sets of promotions. These recommendations will lead to one of the most diverse group of individuals serving as WPD senior staff members, middle management and sergeants."

30. In the memo, Chief Dunning identified the candidates to be promoted by their race, national origin and gender. She indicated that in the first round of promotions there would be "10 individuals – 7 males (3BM, 3 WM, 1 HM), three females (2 BF, 1

WF)". Chief Dunning indicated that in the second round of promotions there would be "4 individuals – 4 males (2 BM, 2 WM)".

31. Chief Dunning's January 16, 2013 promotion memo did not set forth the specific qualifications of any candidate or why she was choosing them, nor did she state that she was recommending the applicants most qualified for promotion. Rather, she stated that the promotions, "will not only bring about diversity amongst the WPD rank structure, but, all of [sic] individuals are qualified for their positions."

32. In early 2013, the Mayor also advised others in WPD senior management, including then Inspector Bobby L. Cummings, that "he wanted movement of officers between the specialized units and the Patrol Division so as to **reflect the demographics** of the City." (emphasis added) According to Cummings, the Mayor stressed diversity as one of the factors to be considered by WPD senior management when considering transfers.

33. As a result, in early 2013, then Inspector Cummings conducted a roll call during which he stated that "transfers in the WPD would **reflect the demographics of the City consistent with the Mayor's vision for diversity and fairness.**" (emphasis added).

34. According to demographic data available on the City of Wilmington website, as of 2010 the population of Wilmington was: 58% African American; 32.6% Caucasian; 12.4% Hispanic (which may be of any race); and 52.5% female.

35. Without any parameters, procedures, or means of how to factor race, national origin or gender characteristics into the promotion process, the Mayor and City

improperly used a diversity-conscious promotion process in order to promote women and certain minorities to leadership positions.

36. Thus, even if the Mayor and City considered the "non-demographic" qualifications of each candidate, they did so with the specific intent of increasing diversity among the leadership ranks of the WPD.

<u>Open Lieutenant Positions</u>

37. In January 2013, there were four open Lieutenant positions due to promotions, appointments and attrition in the WPD.

38. Chief Dunning took race, national origin, and gender of the ten eligible applicants into consideration when selecting her recommendations to the Mayor for promotion to Lieutenant in the WPD.

39. Chief Dunning recommended to the Mayor that James Gestwicki (Caucasian Non-Hispanic Male), Andrew Brock (African American Non-Hispanic Male), Tashawn Counts (African American Non-Hispanic Male) and Amy Rausch (Caucasian Non-Hispanic Female) be appointed as Lieutenants. Gestwicki, Brock, Rausch, and Counts scored respectively first, seventh, tenth and eleventh of the twelve candidates on the promotional examination given in early 2012 and were placed into Band A based upon the promotional examination.

40. At the time Chief Dunning made recommendations to the Mayor for the Lieutenant position, ten Band A Lieutenant candidates, from the 2012 Lieutenant promotional examination, remained.

41. In Band A, 20% of the Lieutenant candidates (i.e., two) were African American and 80% of the Lieutenant candidates (i.e., eight) were Caucasian.

10

Nonetheless, of the eligible Band A candidates, Chief Dunning recommended 100% of the African Americans and 25% of the white officers for promotion to Lieutenant.

42. Sgt. Muniz was the sole Hispanic candidate and therefore 10% of the Lieutenant candidates were Hispanic. Chief Dunning recommended 0% of the Hispanic officers for promotion to Lieutenant.

43. In Band A, 10% of the Lieutenant candidates (i.e., one) was female and 90% (i.e. nine) were male. Chief Dunning recommended 100% of the female officers that were eligible for promotion to Lieutenant.

44. The Mayor then appointed to the four vacant Lieutenant positions the above-named candidates that Chief Dunning recommended. The Mayor has final authority on WPD appointments.

45. As such, on January 17, 2013, the following individuals were promoted to rank of Lieutenant (effective as of January 16, 2013): James Gestwicki (Caucasian Non-Hispanic Male), Andrew Brock (African American Non-Hispanic Male) and Tashawn Counts (African American Non-Hispanic Male). Also on January 17, 2013, Amy Rausch (Caucasian Non-Hispanic Female) was promoted to Lieutenant effective January 26, 2013.

Inappropriate Use of Race, National Origin and Gender As Promotion Factors

46. The Mayor and the City had no compelling interest to justify their use of race, national origin or gender in the promotion process, and were not motivated by a desire to remedy the known effects of any past discrimination. Rather, they were motivated to achieve more of a racial and gender balance in WPD's leadership to better reflect the City's demographics.

47. Defendants did not consider, and never employed, any race, national origin or gender neutral alternative to achieve any alleged compelling interest.

48. As a result of Defendants' discriminatory procedures and practices, Plaintiff's promotion was denied.

49. Plaintiff suffered and will continue to suffer monetary loss, humiliation, emotional distress, and pain and suffering as a consequence of his promotion being denied. He also suffered humiliation, emotional distress, and pain and suffering upon learning that Defendants had discriminated against him on the basis of his race, gender and national origin.

## COUNT I: FOURTEENTH AMENDMENT/ SECTION 1983 RACE AND NATIONAL ORIGIN CLAIM (AGAINST MAYOR AND CITY)

50. Plaintiff repeats and realleges the allegations and averments of paragraphs 1 - 49 as if fully set forth herein.

51. The Mayor acted under color of law in implementing a race and national origin-conscious promotion policy that led the City and Mayor to deny Sgt. Muniz equal protection of the laws and to discriminate against him on the basis of race and national origin in violation of 42 U.S.C. §1983.

52. The Mayor promoted African American Non-Hispanics at a disproportionate rate than Caucasian Hispanics and by doing so has denied the Caucasian Hispanic Lieutenant candidates equal employment opportunities.

53. Defendants had no compelling governmental interest to engage in the discriminatory conduct and they did not evaluate whether prior discrimination had a continuing effect in the WPD that race and national origin-conscious promotions could

remedy. Further, Defendants failed to evaluate whether there was an operational need to promote African American Non-Hispanics.

54. Even, assuming *arguendo* that Defendants had a compelling interest for which they used race and national origin in their promotions criteria, Defendants failed to narrowly tailor their remedy to deal with any such compelling governmental interest under a strict scrutiny analysis and did not consider, nor employ, any race and national origin neutral alternative to achieve that interest.

55. Defendants violated Plaintiff's clear and well-established Constitutional right to receive the same consideration for promotion as other applicants by following discriminatory promotion practices favoring African American Non-Hispanics.

56. Williams acted with reckless indifference or with malice.

57. Plaintiff suffered damages as a direct and proximate result of Defendants' actions and is entitled to relief.

COUNT II: FOURTEENTH AMENDMENT/ SECTION 1983 GENDER CLAIM
(AGAINST MAYOR AND CITY)

58. Plaintiff repeats and realleges the allegations and averments of paragraphs 1 - 57 as if fully set forth herein.

59. The Mayor acted under color of law in implementing a gender-conscious promotion policy that led the City and Mayor to deny Sgt. Muniz equal protection of the laws and to discriminate against him on the basis of gender, in violation of 42 U.S.C. §1983.

60. The Mayor promoted female officers at a disproportionate rate than male officers and by doing so has denied the male Lieutenant candidates equal employment opportunities.

61. Defendants had no important government interest or exceedingly persuasive justification to engage in the discriminatory conduct and they did not evaluate whether prior discrimination had a continuing effect in the WPD that gender-conscious promotions could remedy. Further, Defendants failed to evaluate whether there was an operational need to promote female officers.

62. Even, assuming *arguendo* that Defendants had an exceedingly persuasive justification for which they used gender in their promotions criteria, Defendants failed to substantially relate their remedy to deal with any such exceedingly persuasive justification and did not consider, nor employ, any gender neutral alternative to achieve that interest.

63. Defendants violated Plaintiff's clear and well-established Constitutional right to receive the same consideration for promotion as other applicants by following discriminatory promotion practices favoring female officers.

64. Williams acted with reckless indifference or with malice.

65. Plaintiff suffered damages as a direct and proximate result of Defendants' actions and is entitled to relief.

COUNT III: SECTION 1981 RACE CLAIM (AGAINST MAYOR AND CITY)

66. Plaintiff repeats and realleges the allegations and averments of paragraphs 1 - 65 as if fully set forth herein.

67. By the conduct described above, Defendants intentionally deprived Sgt. Muniz the same rights as are enjoyed by African American citizens to the creation, performance, enjoyment, and all benefits and privileges, of his contractual relationship with the City of Wilmington, in violation of 42 U.S.C. § 1981.

68. The Mayor used a race conscious promotion policy to discriminate against Caucasian Lieutenant candidates.

69. The Mayor promoted African Americans at a disproportionate rate than Caucasians and by doing so has denied the Caucasian Lieutenant candidates equal employment opportunities.

70. Defendants denied Sgt. Muniz a promotion to the position of Lieutenant.

71. Defendants' actions were motivated by racial considerations.

72. As a result of Defendants' discrimination in violation of Section 1981, Plaintiff, a Caucasian, has been denied employment promotion opportunities providing substantial compensation and benefits and has suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life.

73. By the conduct described, Defendants intentionally violated the rights of Plaintiff.

74. In its discriminatory actions as alleged above, Defendants acted with malice or reckless indifference to the rights of Sgt. Muniz, thereby entitling him to an award of punitive damages.

75. Plaintiff suffered damages as a direct and proximate result of Defendants' actions and is entitled to relief.

### COUNT IV: TITLE VII RACE AND NATIONAL ORIGIN CLAIM (AGAINST CITY)

76. Plaintiff repeats and realleges the allegations and averments of paragraphs 1 - 75 as if fully set forth herein.

77. Plaintiff is Caucasian Hispanic.

78. At all times material hereto, Plaintiff was qualified for promotion to Lieutenant in the WPD.

79. There were four vacancies for Lieutenant positions in the WPD in January 2013.

80. Plaintiff was not promoted to a Lieutenant position in the WPD in January 2013 despite being the most qualified individual.

81. Two of the Lieutenant positions were given to less qualified African American Non-Hispanics.

82. The Mayor used his position and a race and national origin conscious promotion policy to discriminate against Caucasian Hispanic Lieutenant candidates.

83. By the conduct described, Defendants intentionally violated the rights of Plaintiff under Title VII.

84. Any legitimate non-discriminatory reason offered by the Defendants for their actions is pretext for intentional and purposeful discrimination based on race and national origin.

85. Alternatively, Sgt. Muniz can demonstrate pretext because the natural probative force of all direct and circumstantial evidence establishes that it is more likely than not that a motivating or determinative cause of the adverse employment action was the race and/or national origin of the Plaintiff.

86. As a result of the Defendants' intentional violation of the Title VII rights of the Plaintiff, he has suffered loss of wages, loss of benefits, emotional distress, mental anguish, loss of reputation, inconvenience, loss of enjoyment of life and incurred attorneys' fees, thereby entitling him to compensatory damages.

87. In its discriminatory actions as alleged above, Defendants acted with malice or reckless indifference to the rights of the Sgt. Muniz (Caucasian Hispanic) thereby entitling him to an award of punitive damages.

88. Plaintiff suffered damages as a direct and proximate result of Defendants' actions and is entitled to relief.

## COUNT V: DDEA RACE AND NATIONAL ORIGIN CLAIM (AGAINST CITY)

89. Plaintiff repeats and realleges the allegations and averments of paragraphs 1 - 88 as if fully set forth herein.

90. Plaintiff is Caucasian Hispanic.

91. At all times material hereto, Plaintiff was qualified for promotion to Lieutenant in the WPD.

92. There were four vacancies for Lieutenant positions in the WPD in January 2013.

93. Plaintiff was not promoted to a Lieutenant position in the WPD in January 2013 despite being the most qualified individual.

94. Two of the Lieutenant positions were given to less qualified African American Non-Hispanics.

95. The Mayor used his position and a race and national origin conscious promotion policy to discriminate against Caucasian Hispanic Lieutenant candidates.

96. The Mayor promoted African American Non-Hispanics at a disproportionate rate than Caucasian Hispanics and by doing so denied the Caucasian Hispanic Lieutenant candidates equal employment opportunities.

97. By the conduct described, Defendants intentionally violated the rights of Plaintiff under the DDEA.

98. Defendants failed to promote Sgt. Muniz due to his race and national origin not because he lacked any qualifications.

99. Any legitimate non-discriminatory reason offered by the Defendants for their actions is pretext for intentional and purposeful discrimination based on race and national origin.

100. Alternatively, Sgt. Muniz can demonstrate pretext because the natural probative force of all direct and circumstantial evidence establishes that it is more likely than not that a motivating or determinative cause of the adverse employment action was the race and/or national origin of the Plaintiff.

101. By failing to promote Sgt. Muniz as it did, the City discriminated against Plaintiff in violation of 19 *Del. C.* § 711(a).

102. In its discriminatory actions as alleged above, Defendants acted with malice or reckless indifference to the rights of the Sgt. Muniz (Caucasian Hispanic) thereby entitling him to an award of punitive damages.

103. Plaintiff suffered damages as a direct and proximate result of Defendants' actions and is entitled to relief.

## RELIEF

WHEREFORE, Ronald Muniz prays that the Court enter judgment against Defendants:

    A. Enjoining Defendants, their officers, agents, employees, and all others acting for or succeeding Defendants, from engaging in the discriminatory

18

employment practices alleged in this Complaint that discriminate against Plaintiff on the basis of his race or national origin.

    B. Declaring that Defendants violated Sgt. Muniz's rights to nondiscriminatory treatment under the Fourteenth Amendment, 42 U.S.C. §§ 1981, 1983, 2000d *et seq.* and DDEA;

    C. Awarding Plaintiff damages from Defendants including lost wages, back pay, front pay, compensatory damages including for pension and other benefits, pain and suffering, impairment of reputation, inconvenience, and non-pecuniary losses, in an amount to be proven at trial, and pre- and post-judgment interest;

    D. Awarding Plaintiff punitive damages from Defendants;

    E. Awarding Plaintiff attorneys' fees and costs pursuant to 42 U.S.C. § 1988; 42 U.S.C. § 2000e-5(k); and 19 *Del. C.* § 715, and any other applicable authority; and

    F. Providing for such other and further relief as the Court deems appropriate and just.

              SMITH, KATZENSTEIN & JENKINS LLP

              */s/ Laurence V. Cronin*
              Laurence V. Cronin (DE ID No. 2385)
              Kelly A. Green (DE ID No. 4095)
              800 Delaware Avenue
              P.O. Box 410
              Wilmington, DE 19899
              (302) 652-8400
              LVC@skjlaw.com
              KAG@skjlaw.com
              Attorneys for Plaintiff

May 27, 2014